United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN BERMAN, | Case No.: C 11-3698 PSG |
| Plaintiff, | **ORDER GRANTING DEFENDANT STATE OF CALIFORNIA, DEP'T OF TRANSPORTATION'S MOTION TO DISMISS; ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANT KNIFE RIVER CORPORATION'S MOTION TO DISMISS** |
| v. | |
| KNIFE RIVER CORPORATION; STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF TRANSPORTATION; and DOES 1-30, | |
| Defendants. | |
| | **(Re: Docket Nos. 16, 36)** |

Pro se Plaintiff John Berman ("Berman") brings this suit against Defendants Knife River Corporation ("Knife River"), the State of California, the California Department of Transportation ("Caltrans"), and Does 1-30 (collectively "Defendants"). Berman seeks damages for injuries from an accident allegedly caused by Defendants' negligent failure to mark a construction zone that Berman encountered while riding his motorcycle. The State of California and Caltrans ("State Defendants") move to dismiss Berman's complaint against them on the ground of sovereign immunity under the Eleventh Amendment. Knife River moves to dismiss Berman's complaint for failure to state a claim upon which relief may be granted. Berman opposes the motions. On February 7, 2012, the parties appeared for hearing. For the reasons explained below, the State Defendants' motion is GRANTED, and Knife River's motion is GRANTED-IN-PART.

Case No.: 11-3698 PSG
ORDER

**United States District Court**
For the Northern District of California

# I. BACKGROUND

Berman filed his original complaint on July 27, 2011, about one year after suffering injuries resulting from a motorcycle crash. In his second amended complaint ("SAC"), Berman alleges as follows. At about midday on June 9, 2010, Berman was riding his Honda motorcycle on State Highway 33 ("SR 33") through Patterson, California at approximately 40 mph.[1] Upon approaching the intersection of SR 33 and Ivy Avenue, Berman began a "prudent, non-negligent right turn" into the Ivy Avenue turnout area, only to encounter an "unexpected, unmarked, non-visible, several-inch raised ledge."[2] The ledge caused Berman's motorcycle to become unstable and crash into the pavement. Berman fell onto his left side and rolled at least once, over both his left shoulder and his motorcycle helmet.[3] Berman was attired with a motorcycle helmet, leather motorcycle jacket, gloves and boots, and heavy denim jeans.[4]

Berman remained conscious during the crash and felt significant pain on his left side and in his left foot.[5] A Knife River construction worker immediately came to Berman's aid. Berman informed him that he thought he could get up. It was at that point that Berman was able to see the ledge that caused the crash. Berman also heard a second construction worker nearby on his radio or telephone who said, "[t]here were no cones out."[6] After a few minutes, while Berman tended to his injuries and inquired whether there was a clinic nearby where he could get an x-ray, Berman noticed that other construction workers had arrived and placed traffic cones along the SR 33 pavement to mark the raised ledge.[7] Two policemen arrived shortly after. They gave Berman directions to a nearby clinic and Berman saw at least one officer speaking with the construction

---

[1] *See* Docket No. 13 ¶ 7 ("SAC").

[2] *See id.*

[3] *See id.* ¶ 8.

[4] *See id.* ¶ 9.

[5] *See id.* ¶10.

[6] *See id.* ¶¶ 11-13.

[7] *See id.* ¶¶ 14-15.

2

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1   workers, but neither officer asked Berman about the circumstances of the crash.[8] Two Knife River

2   workers identified themselves to Berman as supervisors and gave him business cards with the

3   company's point of contact for insurance purposes.[9]

4           Berman suffered damage to his motorcycle[10] and injuries to his left foot and ribs.[11] Knife

5   River's roadway construction work created the unmarked ledge that caused the crash and his

6   injuries. Knife River failed to mark in any fashion the existence of the ledge, and Caltrans failed to

7   exercise reasonable or adequate oversight over Knife River.[12] On these facts, Berman brings causes

8   of action for negligence and gross negligence against both Defendants.

9           When Berman contacted the county sheriff's office a few days later to get the police report,

10  he "was stunned to hear that the report stated, 'Berman made his turn in the construction zone

11  marked by several orange safety cones.'"[13] Berman similarly learned that the same, allegedly false

12  report was made by several Knife River workers to the company's insurer.[14] Over the next several

13  months, Berman remained in communication with Knife River's insurance contact and attempted

14  to correct the falsehood regarding the cones. In part due to the false report and to the insurer's

15  inspection of the crash site several days later, Berman was told that he would receive only limited

16  reimbursement up to $10,000 of his medical bills, after application of Berman's own insurance

17  coverage.[15] On these facts, Berman additionally charges Knife River with violating California

18  Insurance Code Sections 675.5 and 676.2 for material misrepresentation in an insurance claim,

19  California Vehicle Code 31 for providing false or misleading information to law enforcement at the

---

20  [8] *See id.* ¶¶ 16-17.

21  [9] *See id. ¶* 18.

22  [10] Knife River's insurance adjuster ultimately declared Berman's motorcycle to be a total loss. *See
    id. ¶* 32.
23

    [11] *See id* ¶¶ 19, 24.
24
    [12] *See id.* ¶¶ 7, 25.
25
    [13] *See id.* ¶ 29.
26
    [14] *See id.* ¶ 31.
27
    [15] *See id.* ¶ 33.
28

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1    scene of a crash,[16] and the Federal False Information Act, 18 U.S.C. § 1020, for false

2    representation or claim in connection with work performed in a project approved by the

3    Department of Transportation.[17] Berman also brings two additional causes of action against Knife

4    River for violations of California's Unfair Competition Law ("UCL") and conspiracy to mislead

5    insurance investigators, law enforcement, and to violate the Federal False Information Act.

6
      ## II. STATE DEFENDANTS' MOTION TO DISMISS PURSUANT TO ELEVENTH AMENDMENT SOVEREIGN IMMUNITY
7

8    ### A.    Legal Standards

9            A party may move to dismiss on Eleventh Amendment sovereign immunity grounds

10   pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.[18] The Eleventh

11   Amendment "prevent[s] the indignity of subjecting a State to the coercive process of judicial

12   tribunals at the instance of private parties."[19] Immunity applies to suits brought in federal court by

13   a state's own citizens as well as by citizens of other states.[20] "Absent waiver, neither a State nor

14   agencies acting under its control may 'be subject to suit in federal court.'"[21] The Eleventh

15   Amendment confers total immunity from suit and is not merely a defense to liability.[22]

16           A state's decision to waive immunity is "altogether voluntary."[23] The test for waiver

17   therefore is "a stringent one."[24] Courts generally will find a waiver if the state voluntarily invokes

---

18   [16] *See id.* ¶¶ 34-35.

19   [17] *See id.* ¶ 36.

20   [18] *See Proctor v. United States*, 781 F.2d 752, 753 (9th Cir. 1986) (affirming dismissal for lack of
21   subject matter jurisdiction because action was barred by sovereign immunity).

22   [19] *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)
      (quoting *In re Ayers*, 123 U.S. 443 (1887)).

23   [20] *See id.* at 144 (citations omitted).

24   [21] *Id.* at 144 (quoting *Welch v. Texas Dept. of Highways and Public Transportation*, 482 U.S. 468,
25   480 (1987)).

26   [22] *See id.* at 145-146.

27   [23] *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675
      (1999) (citations omitted).

28   [24] *Id.* (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985)).

4

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5

federal court jurisdiction, or if the state makes "'a clear declaration' that it intends to submit itself to our jurisdiction."[25] The Supreme Court has emphasized that a state does not waive immunity merely by "consenting to suit in the courts of its own creation," by stating its intention to "sue and be sued," or even by authorizing suits against it in "any court of competent jurisdiction."[26] Thus, a state's consent to be sued in federal court must be "unequivocally expressed."[27]

6

**B.     Analysis**

7
8
9
10
11
12
13
14
15
16

The State Defendants move to dismiss on the basis that Berman has sued both the State of California and Caltrans for monetary damages, but has not made any material allegations against the State Defendants or shown that the State Defendants waived their sovereign immunity. Caltrans further argues that granting leave to amend as to claims against the State Defendants would be futile. Berman responds with several lines of argument, which he argues "in spite of their probable novelty," create an "overwhelming implication" of waiver. Citing *Atascadero State Hospital v. Scanlon*,[28] Berman seeks to establish waiver implicitly by relying upon various state agency documents, manuals, and texts. Berman alternatively and by analogy seeks to apply the five-prong test set forth in *Belanger v. Madera Unified Sch. Dist.*,[29] to find an agency relationship between Caltrans and the federal government.

17
18
19

In light of the Supreme Court's directive limiting any finding of waiver to that which has been "unequivocally expressed," the court finds Berman's arguments unconvincing.[30] In *Atascadero*, the Supreme Court rejected the notion that the state had implicitly consented to suit in

20

21

[25] *Id.* at 675-676 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)).

22

[26] *Id.* at 676 (citations omitted).

23

[27] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

24
25

[28] 473 U.S. 234, 241 (1985), *superceded by statute*, Rehabilitation Act Amendments of 1986, ' 1003, P.L. 99-506 (Oct. 21, 1986).

26

[29] 963 F.2d 248 (1992).

27
28

[30] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 99 ("Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in our federal system.").

5

Case No.: 11-3698 PSG
ORDER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

federal court by receiving funds for programs under the Rehabilitation Act of 1973.[31] The Court held that the Rehabilitation Act did not abrogate participating states' Eleventh Amendment immunity because Congress must make its intent to abrogate "unmistakably clear in the language of the statute."[32] The Act fell short of "manifesting a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity."[33] Viewed against these standards, Berman's citations to Caltrans' manuals for the many duties that the agency and the State assume, for example, in investigating and anticipating unsafe road conditions, or in administering contracts for the enforcement of labor and safety laws, in no way state an "unmistakable" or "unequivocal" intent to be sued in federal court.

Nor does Berman's argument regarding Caltrans purported role in enforcing the Federal False Information Act, through its oversight and administration of highway construction contracts, change this outcome. The Federal False Information Act subjects to a fine or imprisonment not more than five years any "officer, agent, or employee of the United States or of any State" who "knowingly makes any false statement, false representation, or false report" relating to quality, cost, or other aspect of work performed in connection with contracts for highway construction or related projects submitted for approval to the U.S. Secretary of Transportation."[34] Even accepting Berman's position that an employee's duty to tell the truth or refrain from making a false statement or representation is required under both the Federal False Information Act and the Caltrans' manuals, due to the safety hazards inherent in complex construction projects, Berman fails to cite to any text that expresses an intent to waive immunity, either through "express language" or by "overwhelming implication."[35]

---

[31] *See Atascadero*, 473 U.S. at 237, 247.

[32] *Id.* at 242.

[33] *Id.* at 247.

[34] 18 U.S.C. § 1020.

[35] *Atascadero*, 473 U.S. at 239-40.

6

Case No.: 11-3698 PSG
ORDER

**United States District Court**
For the Northern District of California

1      Berman's second approach similarly falls short. Berman looks to apply the analysis in

2  *Belanger v. Madera Unified Sch. District* of whether a school district is a state agency for

3  sovereign immunity purposes.[36] Berman argues that applying the five-factor test in *Belanger* shows

4  that Caltrans "is sufficiently allied with the federal government that, at least in areas where it has

5  been delegated duties and thus acts as an agent of the federal government, it should not inherit

6  Eleventh Amendment immunity."[37]

7      Berman's approach is flawed because whether a school district warrants treatment as a state

8  agency for the purpose of determining sovereign immunity is not analogous to the status of a state

9  agency in relation to the federal government for the same purpose. As *Belanger* notes, "it is clear

10 that the Eleventh Amendment prohibits actions for damages against state agencies when Congress

11 has failed to express a contrary intent. *** [The plaintiff] Belanger *concedes that her claims for*

12 *damages are barred if the school district is indeed a state agency* for purposes of the Eleventh

13 Amendment."[38] Here, Caltrans is a state agency, and because Berman can point to neither express

14 intent nor unequivocal waiver of immunity, Berman may not pursue his suit against the State

15 Defendants.[39]

### III. KNIFE RIVER'S MOTION TO DISMISS PURSUANT TO
### FED. R. CIV. P. 12(b)(6) AND 8(a)

17     Knife River challenges the SAC on two independent grounds. Knife River argues that

18 Berman's 15-page complaint contains an "excess of irrelevant and /or evidentiary detail" in

19 violation of the "short and plain statement" pleading requirement under Fed. R. Civ. P. 8(a)(2).

20

21

---

22 [36] *See Belanger*, 963 F.2d at 250.

23 [37] *See* Docket No. 27 (Pl.'s Opp'n to State Defs.' Mot. To Dismiss).

24 [38] *See Belanger*, 963 F.2d at 250 (emphasis added).

25 [39] Berman's suggested approach – that the state agency's relationship to the federal government
26 may be evaluated in order to find some type of "agency" waiver of Eleventh Amendment immunity
   – would effectively expand the doctrine of waiver to create an alternate avenue by which a private
27 party could force state agencies to be subject to suit in federal court. Because this approach is
   contrary to the "stringent" standard for waiver under the law, the court cannot ratify such an
28 interpretation.

Case No.: 11-3698 PSG
ORDER

1    Knife River also argues that three of Berman's four causes of action fail to state a claim upon

2    which relief may be granted under Fed. R. Civ. P. 12(b)(6).

3    **A.      Legal Standards**

4           A complaint must contain "a short and plain statement of the claim showing that the pleader

5    is entitled to relief."[40] If a plaintiff fails to proffer "enough facts to state a claim to relief that is

6    plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

7    may be granted.[41] A claim is facially plausible "when the pleaded factual content allows the court

8    to draw the reasonable inference that the defendant is liable for the misconduct alleged."[42]

9    Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged

10   in the complaint, "[d]ismissal can based on the lack of a cognizable legal theory or the absence of

11   sufficient facts alleged under a cognizable legal theory."[43]

12          On a motion to dismiss, the court must accept all material allegations in the complaint as

13   true and construe them in the light most favorable to the non-moving party.[44] The court's review is

14   limited to the face of the complaint, materials incorporated into the complaint by reference, and

15   matters of which the court may take judicial notice.[45] However, the Court need not accept as true

16   allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[46] Pro

17   se complaints are held to "less stringent standards than formal pleadings drafted by lawyers."[47] The

18   court "has an obligation to construe the pleadings liberally and to afford the [plaintiff] the benefit

19   [40] Fed. R. Civ. P. 8(a)(2).

20   [41] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

21   [42] *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009).

22   [43] *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th Cir. 1990).

23   [44] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.,* 540 F.3d 1049, 1061 (9th Cir. 2008).

24   [45] *See id.* at 1061.

25   [46] *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*,
     550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to
26   dismiss).

27   [47] *Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-1491 SI, 2011 WL 2633406, at *2
     (N.D. Cal. July 6, 2011) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594 (1972)).

28

8

Case No.: 11-3698 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

of any doubt."[48] "However, even pro se pleadings must allege facts sufficient to allow a reviewing court to determine whether a claim has been stated."[49] "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."[50]

**B.      Analysis**

**1.      Short and Plain Statement**

Knife River first complains of the amount of detail and evidentiary material included in the SAC. Knife River argues that this material obscures Berman's attempted claims and imposes a burden on Defendants and the court. Specifically, Knife River points to such details as Berman's thoughts and feelings during the course of events related to the motorcycle accident, excerpts from statutes and state agency manuals, and copies of business cards that Berman allegedly received from the Knife River construction crew and police officer at the scene, as superfluous to a short and plain statement of the claim. Berman asks the court for leave to amend if the court finds the complaint to be too prolific or otherwise in need of clarification.

Knife River is correct that much of the detail included in the SAC is unnecessary in light of the notice pleading requirement for federal court. Under the federal rules, "averments [must] 'be simple, concise, and direct.'"[51] The Appendix of Forms to the Federal Rules of Civil Procedure are "intended to indicate the 'simplicity and brevity' of the statement which the rules contemplate."[52] That the complaint must provide "enough facts to state a claim to relief that is plausible on its face"[53] does not alter the "simple, concise, and direct" purpose behind notice pleading. Yet the excess of factual details in Berman's SAC does not render the complaint "virtually

[48] *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).

[49] *Silva-Pearson*, 2011 WL 2633406, at *2 (citing *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

[50] *Eminence Capital, LLC v. Asopeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

[51] *See McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996).

[52] *See id.* (quoting Fed. R. Civ. P. 84).

[53] *Twombly,* 550 U.S. at 570.

9

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8

incomprehensible" as to what basis Berman seeks relief, or so long or confusing as to require it to be stricken in its entirety.[54] Berman's four causes of action are set forth in SAC paragraphs 25 (negligence), 26-27 (gross negligence), 34-35 (unfair business practice), and 40-42 (conspiracy to violate federal false information act).[55] Although the allegations supporting these claims may be deficient for other reasons, as discussed below, the court does not find the complaint as a whole to be improper. This is especially true in light of the "less stringent" pleading standard that courts hold for pro se litigants.[56] The court therefore denies Knife River's motion to dismiss pursuant to Rule 8.[57]

9

### 2.      Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6)

10
11
12
13

Knife River next moves to dismiss Berman's second, third, and fourth causes of action for gross negligence, violations of California's UCL, and conspiracy to mislead insurance investigators, law enforcement, and to violate the Federal False Information Act. Berman opposes the motion but requests leave to amend the SAC to resolve any deficiencies.

14

### a.      Gross Negligence

15
16
17
18

Knife River argues that California law does not recognize a separate tort of "gross negligence" as distinct from negligence. Instead, a party seeking to plead an "aggravated" form of negligence must allege wanton or willful misconduct demonstrating "reckless disregard of the safety of others." This requires pleading more than an ordinary lack of care, but actual or

19
20
21

[54] *Cf. McHenry*, 84 F.3d at 1175-78 (affirming district court's dismissal with prejudice of plaintiff's complaint after two earlier opportunities to amend and detailed guidance from the district court, which plaintiff failed to heed in submitting a third amended complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant").

22

[55] *See* Docket No. 13.

23

[56] *See Silva-Pearson*, 2011 WL 2633406, at *2.

24
25
26
27

[57] In granting Berman leave to amend in part, with respect to Knife River's motion to dismiss pursuant to Rule 12(b)(6), as discussed below, the court directs Berman to streamline his complaint in order to remove references to factual or legal issues that do not pertain to the cause of action being averred. For example, in SAC paragraphs 36 and 37, Berman references various CALTRANS manuals and quotes federal statute in a manner that is difficult to read and comprehend, and moreover does not provide a clear and succinct statement of any claim or its relation to any claim. For an example of a succinct and sufficient complaint for negligence, the court directs Berman to Civil Form 11 of the Appendix of Forms to the Federal Rules of Civil Procedure.

28

10

Case No.: 11-3698 PSG
ORDER

**United States District Court**
For the Northern District of California

1
2
3
4

constructive knowledge of the peril to be apprehended and that injury is the probable result of the

peril.[58] Berman responds that California courts do recognize the tort of gross negligence as set forth

in *Rosencrans v. Dover Images, Ltd.*,[59] but requests that if his claim is nevertheless deficient he be

allowed to amend the complaint to plead reckless disregard of a probability of injury.[60]

5
6
7
8
9
10
11
12

      Whether termed "gross negligence," "willful and wanton negligence," "reckless

misconduct," or something else, a plaintiff may plead a separate cause of action for aggravated

negligence that signals an "extreme departure from the ordinary standard of conduct."[61] The

California Supreme Court defines gross negligence as "either a 'want of even scant care' or 'an

extreme departure from the ordinary standard of conduct.'"[62] This "want of even scant care" or

"extreme departure from the ordinary standard of conduct" must be alleged along with the

traditional elements of negligence.[63] California courts do not require additional elements beyond

these for pleading gross negligence.[64]

13
14

[58] *See* Docket No. 44 at 3 (citing *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007)).

15
16

[59] 192 Cal. App. 4th 1072, 1082 (2011) (explaining gross negligence must be pled by alleging the traditional elements of negligence as well as "extreme conduct" that rises to the level of "either a want of even scant care or an extreme departure from the ordinary standard of conduct") (citations omitted).

17
18
19

[60] *See* Docket No. 40 at 14 (requesting "leave to amend to plead that construction professionals – or anyone who has ever ridden a bicycle – should know that a motorcycle (a legal vehicle for SR33) turning into a several inch ledge, at an angle much less than 30 degrees from the parallel to the ledge would have an extraordinary high probability of becoming uncontrollably unstable").

20
21
22

[61] *See City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007) (comparing the unintentional tort of "ordinary negligence" to that of "gross negligence"). Although the California Supreme Court distinguishes gross negligence from "wanton" or "reckless misconduct," or "willful and wanton negligence," the court also recognizes that some jurisdictions consider one tantamount to the other. *See id.* at 754, n.4.

23

[62] *See id.* at 754 (quoting *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175 (2003)).

24

[63] *See Rosencrans*, 192 Cal. App. 4th at 1082.

25
26
27
28

[64] Knife River's reliance on *Berkley v. Dowds*, 152 Cal. App. 4th 518, 526 (2007) is inapposite. The court in *Dowds* sets forth three additional and "essential" elements that must be pleaded in order "to raise a negligent act to the level of willful misconduct." *See id.* at 528. *Dowds* does not address gross negligence as a separate cause of action. Moreover, the California Supreme Court issued *City of Santa Barbara v. Superior Court* after *Dowds*. As noted above, the court in *City of Santa Barbara* distinguishes willful misconduct from gross negligence and defines gross negligence as Berman has pleaded it in his SAC. *See* 41 Cal. 4th 747, 754 (2007). Earlier California Supreme Court decisions have defined gross negligence in the same manner. *See, e.g.*,

Case No.: 11-3698 PSG
ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

In the SAC, Berman alleges that Knife River negligently failed to mark in any fashion the ledge between the pavement and turnout, demonstrating "both 1) a want of even scant care for the motoring public and 2) an extreme departure from the ordinary standard of conduct for a construction area."[65] Berman alleges additional details regarding the failure to place even a single cone and why that "breach of their professional duty to mark the road hazard they created was grossly negligent."[66] The court fails to find any deficiency in these allegations. The SAC re-alleges the claims in support of Berman's claim for ordinary negligence and adds that Knife River's alleged omissions demonstrated an extreme departure from the ordinary standard for a construction zone. Because Knife River has not challenged Berman's first cause of action or claim for ordinary negligence, the court takes the sufficiency of those elements as pleaded (duty, breach, causation, damages) to be conceded. The facts as alleged are sufficient to state a claim for gross negligence that is "plausible on its face," allowing at least a "reasonable inference" that Knife River could be liable if Berman could prove his allegations regarding an extreme departure from the ordinary standard of conduct.[67]

### b.      Unfair Business Practices

Knife River argues that Berman fails to state a claim for relief under the UCL because as a matter of law, claims for damages are not covered by the UCL. Knife River argues that Berman does not and moreover cannot state a claim for injunctive relief or for restitution – the only forms of relief allowed under the UCL. Berman responds that the court has broad discretion to determine which equitable remedies may be appropriate to remedy UCL violations and requests leave to amend his complaint in order to include a claim for injunctive relief that will "prevent the pleaded harms and similar harms from befalling motorists."[68]

---

*Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1185-86 (2003); *Franz v. Board of Medical Quality Assurance*, 31 Cal. 3d 124, 138 (1982).

[65] *See* Docket No. 13 & 27.

[66] *See id.*

[67] *See Iqbal*, 129 S.Ct. at 1940.

[68] *See* Docket No. 40 at 16.

Case No.: 11-3698 PSG
ORDER

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

     The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[69] Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL – unlawful, unfair, or fraudulent."[70] A UCL claim predicated on unfair business practices may be grounded upon a violation of a statute, or be a "standalone" claim based on an alleged act that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."[71] The UCL provides for limited relief in the form of a court order to enjoin the prohibited activity, or to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."[72]

10

11

12

13

14

15

16

     Berman seeks relief for "damages and consequential damages" caused by the alleged unfair business practice which harmed him by compromising the accuracy and fairness of the insurance investigation.[73] Specifically, Berman alleges that Knife River's false representations to the police and insurance company regarding the presence of orange safety cones in the construction zone before the accident violated public policy against material misrepresentation in an insurance claim[74] as well as Cal. Veh. Code § 31,[75] thereby serving as the basis for an unfair business practice claim.

17

18

     Berman's third cause of action for unfair competition fails to state a claim for any relief available under the UCL because "[w]hile the scope of conduct covered by the UCL is broad, its

19

[69] *See* Cal. Bus. & Prof. Code § 17200.

20

[70] *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

21

[71] *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

22

[72] *See* Cal. Bus. & Prof. Code § 17203.

23

[73] *See* Docket No. 13 ¶ 34.

24

25

26

[74] *See* Docket No. 13 ¶¶ 29-34. Berman contends that the basis for this public policy is expressed in Cal. Ins. Code § 676.2(b)(3)(B). Section 676.2(b)(3)(B) provides for the cancellation of a commercial insurance policy on various grounds, including discovery of fraud or material misrepresentation by the insured in pursuing a claim under the policy. *See* Cal. Ins. Code § 676.2(b)(3)(B).

27

28

[75] Cal. Veh. Code § 31 prohibits any person from knowingly providing false information to an on-duty peace office.

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

remedies are limited."[76] California law is well-established that a UCL action is equitable in nature, and damages cannot be recovered.[77] Even if Berman is able to state a claim for an unfair business practice, he is unable to allege a basis for injunctive or other equitable relief. Berman argues that economic injury to the plaintiff without any corresponding gain by the defendant is sufficient to constitute "injury in fact" in order to permit the plaintiff to seek an injunction under the UCL, even if restitution is not available.[78] Berman also describes his own economic losses and how the denial of his reimbursement claim against Knife River's insurance likely resulted in an economic gain to the company in the form of maintaining insurance premiums or preventing account pay-outs.[79] But Berman confuses the requirements for standing under the UCL with those to state a claim for relief.

In *Kwikset Corp. v. Superior Court*, the court clarified the UCL's standing requirements, as narrowed by a 2004 state initiative, to require an economic injury-in-fact that was caused by the unfair business practice at issue.[80] The *Kwikset* decision does not expand the limited remedies presented by the UCL.[81] Nor does the court's "broad equitable powers to remedy violations" under the UCL[82] create an opportunity for an injunction or restitution where the factual allegations do not establish any basis for equitable relief. In this case, where Berman alleges injuries caused by a motorcycle crash and additional economic harm resulting from the insurance determination allegedly affected by Knife River's unfair business practice, there has been neither transfer of

---

[76] *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

[77] *See id.* (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992)).

[78] *See* Docket No. 40 at 15 (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)).

[79] *See id.*

[80] *See Kwikset Corp.*, 51 Cal. 4th at 322.

[81] In fact, the representative plaintiff in *Kwikset Corp.* sought both injunctive relief and restitution related to the sale of lockets allegedly labeled in a misleading manner that led consumers to purchase them based on misinformation.

[82] *See Kwikset Corp.*, 51 Cal. 4th at 320 (citations omitted).

14

Case No.: 11-3698 PSG
ORDER

money or property from Berman to Knife River.[83] Instead, Berman, as alleged, has suffered

damages. This harm may be compensable, but not under the UCL. Because an amendment might

address this deficiency, Knife River's motion to dismiss the third cause of action is granted with

leave to amend.

### c.   Civil Conspiracy

Berman's fourth cause of action is for "conspiracy to mislead insurance investigators, law

enforcement, and to violate the Federal False Information Act." Knife River argues that Berman's

claim is deficient both as to alleging the elements of conspiracy and of the tort that the defendants

are alleged to have conspired to commit. Knife River also argues that if Berman seeks to allege an

underlying tort based in fraud, he must meet the standard for heightened pleading under Fed. R.

Civ. P. 9(b). Berman responds that he has set forth sufficient factual allegations to state a claim for

civil conspiracy, as well as specified the alleged violation of statute statutes and the Federal False

Information Act as the underlying tort.

A claim for civil conspiracy is not itself an independent tort, but a legal mechanism that

imposes a form of vicarious liability on persons who may not themselves have committed the

underlying tort, but who "share with the immediate tortfeasors a common plan or design in its

perpetration."[84] The plaintiff must allege "that the defendant had knowledge of and agreed to both

the objective and the course of action that resulted in the injury, that there was a wrongful act

committed pursuant to that agreement, and that there was resulting damage."[85] "Standing alone, a

---

[83] *See* Cal. Bus. & Prof. Code § 17203 (providing for court order "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition").

[84] *See Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 (2005) (quoting *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).

[85] *Id.* (quoting *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 47 (1998)). *See also Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994) ("The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.") (citations omitted).

15

Case No.: 11-3698 PSG
ORDER

United States District Court
For the Northern District of California

1    conspiracy does no harm and engenders no tort liability. It must be activated by the commission of

2    an actual tort."[86]

3        Berman's conspiracy allegations center on the presence of Knife River workers at the scene

4    of the crash who formed a conspiracy with other Knife River workers, including two named

5    supervisors, sometime shortly after the crash.[87] The SAC describes the underlying tort as "to

6    perpetrate unfair business practices, through material omissions and/or misrepresentations to law

7    enforcement, insurance investigators, and other deceived persons as contemplated by the Federal

8    False Information Act."[88] The SAC further refers to the wrongful act or underlying tort as

9    "unlawful deceit" of persons in law enforcement and for insurance purposes.

10        These allegations only get Berman part of the way to stating a claim for relief for civil

11    conspiracy. Taking the allegations to be true and in the light most favorable to Berman, Berman

12    has alleged facts to set the circumstances for formation and operation of the conspiracy, based on

13    the presence of Knife River's workers, their conferencing, and appearance of the orange cones, but

14    has not alleged an actionable, underlying tort. As an evidentiary matter, "the agreement between

15    conspirators need not be proved by direct evidence, but may be shown by circumstantial evidence

16    that tends to show a common intent."[89] Thus, at the pleading stage, even without alleging directly

17    that the workers arrived at some common agreement or design to misrepresent the conditions

18    surrounding the crash, Berman alleges facts and details sufficient to state a legally cognizable

19    claim of circumstances from which may be inferred at least a tacit agreement.

20

21

22    [86] *Applied Equipment Corp.*, 7 Cal. 4th at 511. *See also Okun v. Superior Court*, 29 Cal. 3d 442,
      454 (1981).

23

24    [87] *See* Docket No. 13 ¶ 41.

25    [88] *See id.*

26    [89] *See Peterson v. Cruickshank*, 144 Cal. App. 2d 148, 163 (1956). *See also Wyatt v. Union Mortg.
      Co.*, 24 Cal. 3d 773, (1979) ("[T]he requisite concurrence and knowledge 'may be inferred from
      the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and

27    other circumstances.'") (quoting *Chicago Title Ins. Co. v. Great Western Financial Corp.*, 69 Cal.
      2d 305, 316 (1968)).

28

16

Case No.: 11-3698 PSG
ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

However, because "the conspiracy itself is not actionable without a wrong,"[90] Berman must allege an actionable underlying tort. The conspiracy portion of the SAC identifies no cognizable underlying tort that advances the claimed design or scheme. As discussed above, Berman does not allege a claim for relief under the UCL, thereby rendering his unfair business practices claim inapplicable as the underlying tort to his conspiracy claim. The other bases for an underlying tort suggested by the SAC include the alleged violations of Cal. Veh. Code § 31 prohibiting false statements to a law enforcement officer, of Cal. Ins. Code § 676.2(b)(3)(B) providing for cancellation of a commercial insurance policy for a material misrepresentation by the insured in pursuing a claim under the policy, and of the Federal False Information Act, 18 U.S.C. § 1020, a statute subjecting to criminal liability a person, firm, or corporation who knowingly makes a false representation  or report with respect to the character or quality of work performed in connection with a federally-approved highway construction project. These statutes, however, do not give rise to an actionable claim by Berman.[91] Because an amendment might address this deficiency, this dismissal is granted with leave to amend.

### IV. CONCLUSION

For the reasons set forth above, the court hereby GRANTS the State Defendants' motion to dismiss. Because it is clear that no amendment could save the complaint against the State Defendants, this dismissal is without leave to amend. The court further DENIES Knife River's motion to dismiss the second cause of action for gross negligence and GRANTS Knife River's motion to dismiss the third and fourth causes of action with leave to amend. Any further amended complaint shall be filed no later than March 21, 2012.

**IT IS SO ORDERED.**

Dated: 2/28/2012

_Paul S. Grewal_

PAUL S. GREWAL
United States Magistrate Judge

---

[90] *See Okun*, 29 Cal. 3d at 455.

[91] *See Applied Equipment Corp.*, 7 Cal. 4th at 511 ("[T]ort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty.").

17

Case No.: 11-3698 PSG
ORDER